## UNITED STATES v. BLACKWOOD.

### No. 2529.

Circuit Court of Appeals, First Circuit.

March 10, 1931.

Ellen L. Buckley, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., and Hubert C. Thompson, Asst. U. S. Atty., both of Boston, Mass., on the brief), for the United States.

William H. Lewis, of Boston, Mass. (Matthew L. McGrath, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

These proceedings are based on a libel of the motorboat Evelyn Ruth, licensed September 28, 1929, for the coasting trade.

The allegations of count 1 of the libel are: That she was unlawfully employed by her master in a trade other than that for which she was licensed, in that on the 30th day of March, 1930, she was unlawfully employed by Victor Blackwood in transporting, importing, and bringing into the United States on board said vessel a cargo of intoxicating liquors intended for beverage purposes, in violation of the Eighteenth Amendment of the Constitution of the United States, and in violation of section 3 of title 2 of the National Prohibition Act (27 USCA § 12), and was subject to forfeiture under section 4377 of the Revised Statutes (46 USCA § 325). Of count 2: That on said 30th day of March said vessel, licensed for the coasting trade, was unlawfully employed by the said Blackwood, her master, in a trade other than that for which she was licensed, and in fraud of the Revenue Act of the United States, in that she was employed by said master in unlawfully and fraudulently importing, bringing in and carrying into the United States at Boston and

there discharging a large cargo of intoxicating liquors coming from a foreign port, and without customs supervision or a permit or special license for such discharging and unloading issued by the collector of customs for the district of Massachusetts, and without payment to said collector of the lawful custom duties due to the United States on said liquor; and was subject to forfeiture under section 4377 of the Revised Statutes (43 USCA § 325). Of count 3: That on Sunday, said March 30, 1930, the said vessel, licensed for the coasting trade as aforesaid, did carry into the port of Boston a large cargo of intoxicating liquors, which said liquors were then and there arriving in the United States from a foreign port or place, the name of said foreign port or place being to your libelant unknown; said cargo of liquor, being of the value of more than $500, was unlawfully unladen on said Sunday at night from said vessel without a special license granted by the collector of customs for said district of Massachusetts, and was subject to forfeiture under sections 450 and 453 of the Tariff Act of September 21, 1922 (19 USCA §§ 263, 266).

A hearing was had on the libel and the answer of the claimant. The government presented evidence to show that some time, about 3 o'clock on Sunday morning, March 30, 1930, the Evelyn Ruth was alongside a small wharf or dock behind an unoccupied or "dead" plant of the Consolidated Gas Company in Boston; that a number of men were seen bringing up the dock what afterward proved to be 270 bags containing bottles of whisky, which were piled on the beach and afterward transported by the men to the boiler room of the plant of the Consolidated Gas Company; that the watchman of the gas company in going his rounds was prevented from entering the building by a man armed with a revolver; that about 5 o'clock in the morning three police officers appeared and took possession of the liquor and found the Evelyn Ruth grounded alongside the dock at low tide; that another witness, on coming near the vessel, detected the odor of alcohol; that the bottles of liquor were labelled either "Indian Hill Bourbon Whiskey bottled in bond under government supervision by Distillers Corporation, Limited, Montreal, Canada," or "Golden Wedding Pure Rye Whiskey bottled in bond by Distillers Corporation, Limited, Montreal, Canada," and each bottle bore on its stopper an export label; and the customs examiner testified that the liquors were of the value of $8,432; that he had compared the liquors with some recently seized and condemned by the court as of foreign origin in The Irene C (D. C.) 41 F.(2d) 288, and they were of the same type.

Later at 10 o'clock, when a custom officer went to the dock to take possession of the Evelyn Ruth, she had gone; the tide in the meantime having risen. Orders were given to the Coast Guard to follow her, which was done. The Coast Guard cutter sighted her about half a mile northwest of Race Point, and followed her into Provincetown Harbor, and, after signalling her with a horn, she there made a dock, and the crew hastily abandoned her and disappeared; she was seized by the Coast Guard and delivered to the collector of customs at Boston and there libelled. The claimant offered no evidence.

The District Court held that the first count was based on section 26 of title 2 of the National Prohibition Act (27 USCA § 40), and that the seizure, not having been made while the transportation was in progress, was unlawful, and therefore held that under this count a forfeiture of the vessel could not be grounded upon it; and further held that under counts 2 and 3 there was not sufficient evidence to find that the liquors were of foreign origin.

■ The District Court apparently misconstrued the libel. The first count was not based on section 26 of title 2 of the National Prohibition Act (27 USCA § 40) but on section 4377 of the Revised Statutes (46 USCA § 325), as was also the second count, which section provides for forfeiture of a vessel engaged in a trade other than that for which she is licensed. It is unnecessary, however, to consider whether the Evelyn Ruth was lawfully seized and forfeitable under counts 1 and 2, as we think she was clearly forfeitable under the third count for violation of sections 450 and 453 of the Tariff Act of 1922 (19 USCA §§ 263, 266), on which the third count is based.

Section 450 of the Tariff Act of 1922 provides:

"No merchandise, * * * arriving in the United States from any foreign port or place, * * * shall be unladen from the carrying vessel or vehicle on Sunday, a holiday, or at night, except under special license granted by the collector under such regulations as the Secretary of the Treasury may prescribe."

Section 453 provides:

"If any merchandise * * * is laden on, or unladen from, any vessel or vehicle without a special license or permit therefor

issued by the collector, * * * such merchandise * * * shall be subject to forfeiture, and if the value thereof is $500 or more, the vessel or vehicle on or from which the same shall be laden or unladen shall be subject to forfeiture."

It will be noted that section 450 prohibits the landing of merchandise on Sunday or at night without a special license, and section 453 provides the penalty, and, when the merchandise equals or exceeds the value of $500, subjects both the vessel and merchandise to forfeiture.

The District Court apparently expressed a doubt as to whether under these sections a vessel could be seized after the offense was committed, citing United States v. One Reo Sedan, 39 F.(2d) 120. Sections 450 and 453 of the Tariff Act of 1922 do not condition seizure of a vessel on its being at the time engaged in committing the offense, unlike the forfeiture of vehicles under section 3061, 3062 Rev. St. (19 USCA §§ 482, 483), but declares generally that a vessel from which such goods shall be unladen on Sunday or at night, without a special permit, shall be subject to forfeiture.

The seizure in this case was of an American vessel, and was made by officers of the Coast Guard in the navigable waters of the United States within the district of Massachusetts. There is no question as to the authority of these officers to seize an American vessel "which shall become liable to seizure by virtue of any law respecting the revenue, as well without as within their respective districts." Rev. St. § 3072 (19 USCA § 506). And there could be none, for it was decided in Maul v. United States, 274 U. S. 501, 47 S. Ct. 735, 71 L. Ed. 1171, that the officers of the Coast Guard are officers of the customs having districts within the meaning of section 3072, who are authorized to make seizures without as well as within their respective districts.

In that case it was admitted that the vessel in question was subject to seizure and forfeiture on two grounds: (1) For violation of section 4377 of the Revised Statutes (46 USCA § 325); and (2) for violation of section 4337 (46 USCA § 278) thereof. In the instant case, the situation is reversed. The question here, under count 3, is whether the vessel was liable to seizure and forfeiture for violation of sections 450 and 453 of the Tariff Act of 1922 (19 USCA §§ 263, 266)—not whether the officers who made the seizure were authorized to make it. The liquors in question were unladen from the Evelyn Ruth at the port of Boston on Sunday, March 30, 1930, at night, without a special license, and were of a value in excess of $500. Under these circumstances, if the vessel "became liable to seizure by virtue" of sections 450 and 453, after the liquors were unladen, the District Court should have entered a decree of condemnation and forfeiture of the vessel if there was evidence showing probable cause to believe the liquors were of foreign origin, as hereafter will appear.

As above pointed out, sections 450 and 453 do not condition the seizure of a vessel to the time when she is actually offending against the law, but contemplate that the seizure may be made after the vessel is unladen [Vincent v. United States (C. C. A.) 19 F.(2d) 344]; and the only question remaining for consideration is whether, under the circumstances of this case, no evidence having been introduced by the defendant, there was sufficient evidence to warrant a finding of probable cause for the institution of the libel based on the third count, including the foreign character of the liquor, within the meaning of section 615 of the Tariff Act of 1922 (19 USCA § 525). Section 615 provides:

"In all suits or actions brought for the forfeiture of any vessel, * * * seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant: * * * Provided, that probable cause shall be first shown for the institution of such suit or action, to be judged of by the court."

The District Court found that the government by its evidence had sustained the burden of proof, and that it was sufficient to warrant a finding in its favor of all the facts alleged in the libel, so far as concerns count 3, except as to the foreign origin of the liquors. The court assumed that the evidence warranted a finding of probable cause for instituting the proceeding, which necessarily included a finding of probable cause to believe that the liquors were of foreign origin, for the government could not have probable cause for instituting the libel if it did not have probable cause to believe the existence of all the facts therein alleged. But in substance and effect the District Court held that, notwithstanding section 615 placed the burden of proof upon the claimant, the burden was on the government. This was error. There was abundant evidence warranting a finding of probable cause for instituting the libel so far as it con-

cerned the third count. It is unnecessary to recount it.

This court in Vincent v. United States, 19 F.(2d) 344, 346, had under consideration this very question. It was there held that the "evidence was sufficient to justify the District Court in finding probable cause for the bringing of the libel (section 615), such as would require the claimant to assume the burden of proof and show that the motorboat was not guilty of the charges preferred against her (Locke v. United States, 7 Cranch, 339, 3 L. Ed. 364; The Squanto [C. C. A.] 13 F.[2d] 548; The Thompson, 3 Wall. [70 U. S.] 155, 18 L. Ed. 55), which he failed to do; * * * justifying a forfeiture of the vessel under sections 450 and 453, above quoted. * * * "

The decree of the District Court is vacated, and the case is remanded to that court with directions to enter a decree of forfeiture.

ANDERSON, Circuit Judge, concurs in the result.