**UNITED STATES v. ONE 1949 PONTIAC SEDAN et al.**

**No. 10483.**

United States Court of Appeals Seventh Circuit.

Feb. 21, 1952.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Anthony Scariano, Asst. U. S. Atty., Chicago, Ill., for appellant.

Alfred E. Roth, Charles D. Snewind, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

The government appeals from a judgment for claimant upon its libel seeking forfeiture of a 1949 Pontiac Sedan. The action, filed under 49 U.S.C.A. §§ 781–788, and 19 U.S.C.A. § 1615, was in two counts. The first charged that "the said Pontiac Sedan was used for the purpose of transportation, * * * of a contraband article, to wit, 40 tablets of morphine sulfate * * * not purchased in * * * or from the original stamped package as required by * * *" 26 U.S.C.A. § 2553(a). Count II, essentially the same, alleged that the morphine sulfate was contraband in that it had been "imported or brought into the United States contrary to law * * *" in violation of 21 U.S.C.A. § 174. Claimant, Irene Moses, intervened as owner of the vehicle, denying the several allegations of the libel.

The evidence adduced at trial consisted of certain preliminary stipulations, the testimony of Narcotic Agent Sojat and a stipulation as to Agent Pocoroba's testimony. Certain parts of Sojat's testimony, objected to by claimant, were not considered by the trial court, and we have not considered it here, except from the standpoint of admissibility. The evidence, thus restricted, established the following.

On May 5, 1949, Agents Sojat, Pocoroba and Gross proceeded to 6223 Champlain Avenue, Chicago, for the purpose of executing a search warrant. Pocoroba was familiar with the car with which we are concerned and knew that one Marvin Moses was using it. Upon arrival Sojat and Pocoroba scanned both sides of the street for the automobile for a distance of about three-quarters of a block, but it was not in sight. They then entered the premises and proceeded to search them. They found large quantities of various types of narcotics concealed in a steamer trunk. They had been on the premises for some 30 minutes and were still searching, when Marvin Moses arrived on the scene. He was asked who owned the contents of the trunk and replied that he did. He was immediately placed under arrest and his person searched. The officers found upon him the keys to the subject vehicle and a small pasteboard box containing forty tablets of morphine sulfate, bearing no internal-revenue stamps. The agents then saw, through a window, the automobile parked nearby. It was seized and these proceedings followed. Claimant offered no evidence.

The District Court found: 1) there was no competent evidence that Moses ever rode in the car; 2) there was no evidence that when and if he rode in the vehicle, he carried narcotics with him; 3) there was no proof that the morphine sulfate had been purchased in or from a container other than the original stamped container, that it had been unlawfully imported, or that it had been transported in the subject vehicle. The court concluded that there was no showing of probable cause for the seizure of the automobile and entered judgment for its delivery to claimant.

Libellant contends that: 1) there was competent evidence that Marvin Moses rode in the automobile; 2) under 26 U.S.C.A. § 2553(a) the absence of appropriate tax-paid stamps on the morphine sulfate container rendered the contents thereof prima facie contraband; 3) probable cause was shown for institution of the libel, and, consequently, the burden of proving the innocence of the automobile was on claimant.

As previously stated this action is prosecuted under Sections 781–788 of Title 49, U.S.C.A. § 784 of which provides: "All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of vessels and vehicles for violation of the custom laws * * * shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter, * * *." Under Title 19 (Customs Duties) U.S.C.A. § 1615, "In all suits or actions brought for the forfeiture of any * * * vehicle * * * where the property is claimed by any person, the burden of proof shall lie upon such claimant; * * * Provided, That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court, * * *." Thus, it is clear from the express terms of Section 784, Title 49 that 19 U.S.C.A. § 1615 is applicable to the instant proceeding. United States v. Andrade, 9 Cir., 181 F.2d 42; W. E. Dean & Co. v. United States, 5 Cir., 171 F.2d 468.

While questions concerning the admissibility of evidence and the effect of the prima facie proof provisions of 26 U.S.C.A. § 2553(a) were raised below, and were argued here, it is apparent, we think that proper determination of the issues demands that the interpretation and effect of 19 U.S.C.A. § 1615 be first considered. This is particularly true in the light of claimant's election to offer no proof in the proceedings below, despite the provisions of Section 1615, which place the burden of proof upon her, provided probable cause for the institution of the proceedings is first shown by libellant. If there was probable cause for the belief that 1) the narcotics in question were contraband and, 2) the contra-

band was transported in this 1949 Pontiac, claimant having offered no proof, a decree of forfeiture should have entered. United States v. Davidson, 1 Cir., 50 F.2d 517; United States v. Blackwood, 1 Cir., 47 F.2d 849.

Thus we are faced initially with the question: What is meant by probable cause as that term is used in Section 1615? The Supreme Court was confronted with an identical problem of definition as early as 1813 in the case of Locke v. United States, 7 Cranch 339, 11 U.S. 339, 3 L.Ed. 364. There an action was brought under a statute strikingly similar to the one here involved, providing that in a libel proceeding for forfeiture of goods improperly imported into the United States, "if the property be claimed by any person * * * the onus probandi shall lie upon such claimant. * * * but * * * only where probable cause is shown for such prosecution * * *." 1 Stat. 678. Chief Justice Marshall, writing for a unanimous court, stated: "It is contended that probable cause means prima facie evidence, or, in other words, such evidence as in the absence of exculpatory proof would justify condemnation. * * * This would render the provision totally inoperative. * * * The term * * * according to its usual acceptation, means less than evidence which would justify condemnation; * * * It imports a seizure made under circumstances which warrant suspicion." See also Wood v. United States, 16 Pet. 342, 41 U.S. 342, 10 L.Ed. 987 ("reasonable ground of presumption that the charge is or may be, well founded"); Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265 ("reasonable suspicion"); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. ("reasonable ground for belief in guilt"). But recently in Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879, while deciding a question of probable cause under the search and seizure provisions of the Fourth Amendment, the Court departed from the test of "suspicion." However, it alluded to Chief Justice Marshall's statement that the phrase "means less than evidence which would justify condemnation," i.e., less than prima facie evidence.

Thus, from these and other decisions it appears correct to conclude that probable cause, as used in this context, is less than prima facie proof, but more than mere suspicion. Lying somewhere in the hiatus between these two extremities the semanticist would find its precise meaning. However, such meticulous precision is not needed for practical application. See United States v. One Dodge Coupe, D.C.S.D. N.Y., 43 F.Supp. 60, 62. Suffice it to say that we believe that, if the facts are of such a nature as to support a reasonable belief of a violation of the statute probable cause has been shown.

We turn to the application of the term to the facts at hand. For purposes of clarity it will be best to consider the two facets of the problem separately. Thus, were the facts sufficient for libellant reasonably to believe that the morphine sulfate in question was contraband within the meaning of 49 U.S.C.A. § 781(b)(1)? There is no dispute that morphine sulfate is contemplated by the phrase "any narcotic drug" as used in that section. Libellant averred an unlawful purchase, which, under 26 U.S.C.A. § 2553(a), is the consequence of an unlawful sale. Thus, there is no doubt that the allegations of the libel were within the following definition of contraband, contained in Section 781(b)(1). "Any narcotic drug * * * which is sold * * * in violation * * *" of the "laws or regulations of the United States dealing therewith * * *." Furthermore there is no question but that the pasteboard box containing the morphine sulfate, found in Moses' possession, bore no tax-paid internal-revenue stamps. Indeed the lower court so found. But it also found that there was no proof that the narcotics were not purchased in or from the original stamped package as alleged. To this libellant replies that the presumption of unlawful purchase, raised under Section 2553(a) by the absence of tax-paid stamps, is available to it. Claimant, of course, supports the position of the trial court, insisting that the presumption raised by Section 2553(a) is

limited to criminal proceedings thereunder, and cannot be relied upon by libellant in a civil proceeding for forfeiture. Thus, the trial court and claimant would require libellant to introduce positive proof tending to show that the morphine was purchased illegally.

Despite existing authority to the contrary, United States v. One Oldsmobile Club 'Coupe, etc., D.C.Conn., 33 F.Supp. 848; United States v. One Nash 'Coupe, D.C.N.D.Ill., 47 F.2d 249; United States v. One Studebaker Roadster, D.C.Tenn., 40 F.2d 557, we are of the opinion that libellant is free to rely on the provisions of Section 2553(a) to establish probable cause for the institution of this proceeding. It is true that the section defines a crime and the proof necessary to prove it. But implicit in the section are two phases of the prima facie concept. The first is that the absence of appropriate revenue stamps raises a presumption that the narcotics in question were unlawfully purchased. The second is that possession of such unstamped narcotics likewise raises a presumption that the possessor was the illegal purchaser. It is the first of these upon which libellant relies. Assuming, arguendo, that the *prima facie weight* of the absence of appropriate stamps is limited to prosecutions under Section 2553(a), we are not concerned in the instant proceeding with prima facie evidence, but rather with that of *probable cause*. We have no hesitancy in concluding that libellant, aware that Congress had declared such absence of tax-paid stamps to be presumptive of unlawful purchase, would have reasonable grounds for believing that the narcotics taken from Marvin Moses were the fruits of an unlawful transaction, and hence were contraband within the meaning of 49 U.S.C.A. § 781(b)(1). In reaching this conclusion we do not lack support from other 'Courts. United States v. Gramling, 5 Cir., 180 F.2d 498, 500–501; General Motors Acceptance 'Corp. v. United States, 6 'Cir., 63 F.2d 209. See also United States v. One Gardner Roadster, D.C.W.D.Wash., 35 F.2d 777, 778.

We approach then the second phase of the problem, namely, did libellant adduce sufficient evidence to support a reasonable belief that the contraband had been transported in the subject vehicle? What has been said previously in regard to quantum of proof is equally applicable here.

█ At the outset we are faced with a question of admissibility of certain evidence. *Agent Sojat was permitted to testify, subject to an objection of hearsay, that Marvin Moses, upon being asked "how he came to the building" replied, by means of the automobile in question.* It appears that the trial court did not consider this testimony, for it found: "There was no *competent* evidence that Marvin Moses ever rode in the car in question." (Emphasis supplied.) Libellant assigns as error this *ruling, asserting that Moses' declarations* were admissible in the same manner as those of the master of a ship, or as part of the res gestae. Regarding, as we do, the res gestae doctrine as equivalent to the so-called "spontaneous utterance" exception to the hearsay rule, we doubt that these declarations were admissible. Their spontaneous character was destroyed as a result of their solicitation by Sojat. Furthermore, there was no showing of the proximity of time with the event about which they were made. It appears equally doubtful from a review of the decisions that these declarations can be viewed as the *declarations of a master of a ship.* Exhaustive research reveals but one case in which the fiction of owner pro hac vice, applicable in admiralty to the master of a ship, has been extended to the bailee of a *vehicle on land. See United States v. One* 1941 Buick Convertible Coupe, etc., D.C.W. D.Tex., 61 F.Supp. 468. The facts of that case differ materially from those in the instant proceeding, rendering it inappropriate as authority. Cf. Commercial Credit Corp. v. United States, 2 'Cir., 58 F.2d 195. Nor does libellant's argument, premised on the provisions of 28 U.S.C. (Supp. III) Sec. 2461(b) resolve this doubt. That section provides that forfeitures such as this "may be enforced by a proceeding by libel which shall conform as near as may be to proceedings in admiralty." That section would seem to be intended to cover the procedure in forfeitures on land rather than questions relative to the substantive

effect of the declarations of a driver-bailee, of an automobile. Therefore the trial court would seem to have properly disregarded this testimony. But see The 237–G, 1 Cir., 19 F.2d 344; United States v. One 6–54–B Oakland Touring Sedan, D.C.D.Ariz., 9 F.2d 635, 636. However in view of our further conclusions, the propriety of the exclusion of this evidence is not decisive of the issues herein.

■ The other evidence tending to support a reasonable belief that the narcotics had been transported in the subject vehicle has been previously summarized. It is unnecessary to repeat it. It is sufficient to say that we consider it clearly adequate to support a reasonable belief that Moses had driven the car, with the narcotics on his person, just prior to his arrest. No cases have been found involving reasonably similar fact situations. However, the following are analogous in certain respects: Jackman v. United States, 1 Cir., 56 F.2d 358; The 237–G, 1 Cir., 19 F.2d 344; The Struggle, 9 Cranch 71, 13 U.S. 71, 3 L.Ed. 660.

There being an adequate basis for libellant reasonably to believe that the morphine sulfate was contraband, and that Moses had transported it in the subject vehicle, probable cause was shown for institution of the proceedings. Thereupon the burden was cast upon claimant to exculpate the automobile. She chose to remain mute, offering no evidence of innocence or avoidance. See 49 U.S.C.A. § 782. In this situation it was not necessary that libellant's proof amount to prima facie evidence "which would justify condemnation" in the face of exculpatory proof.

We are well aware that the result reached places the burden of proof on claimant, who holds a position similar to a defendant, at a point in the flow of evidence considerably prior to the establishment of a prima facie case. But it is the mandate of Congress that in actions of this nature the task of coming forth with the evidence be so placed. The facts in cases such as this are often peculiarly subject to the control of a claimant. And, though the government is no longer allowed to act on mere suspicion, this court would unjustifiedly modify the express terms of 19 U.S.C.A. § 1615 if it should hold libellant to a more stringent burden of proof than is here described. To do so "would render the provision totally inoperative."

■ We have dealt with only Count I of the libel. Consideration of Count II is unnecessary for, if one count is sufficient in law and adequately proved, a decree of forfeiture may enter despite the shortcomings of other counts. Friedenstein v. United States, 125 U.S. 224, 8 S.Ct. 838, 31 L.Ed. 736; Coffey v. United States, 116 U.S. 427, 6 S.Ct. 432, 29 L.Ed. 681.

We might add that in reaching this conclusion we are not unmindful of Federal Rule of Civil Procedure 52(a), 28 U.S.C. which provides that findings of fact "shall not be set aside unless clearly erroneous, * * *." Rule 81(a)(2) makes that provision applicable to this proceeding. But we think it clear that the findings of the trial court were "clearly erroneous" as a matter of law. Apparently they were the consequence of the trial court's placing too great a burden of proof on libellant.

The judgment is reversed with directions to the District Court to enter a decree of forfeiture in favor of libellant.

MAJOR, Chief Judge (dissenting).

I would affirm the judgment on the basis of the findings of the trial court. Certainly I do not share the view that they are clearly erroneous. It was the car which was the accused, it was charged with the offense, and not Moses. If the accused had been a person, I think there would be no question but that the statements made by Moses, as well as the contraband found in his pocket at a time when he was completely disassociated from the accused, would be inadmissible against the latter (in the absence of a conspiracy). I discern no reason why the same rule should not apply as to the accused car. The majority appears to concede that statements made by Moses were not competent but at the same time relies, improperly so I think, upon the contraband found in his pocket as evidence against the car. With the exclusion of this evidence, there remains nothing against the

car. But even if it be accepted, its connection with the car rests upon nothing more than guess or speculation. Therefore, the government is in no position to claim the benefit of Sec. 1615, which places the burden of proof on a claimant. Congress, in my view, has made the forfeiture law sufficiently drastic and I am not in favor of increasing the severity by judicial decree.,